```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                     JACKSON DIVISION
```

THOMAS HUFFMASTER                                          PLAINTIFF

VS.                               CIVIL ACTION NO. 3:07CV676TSL-JCS

CHARLES FOSTER, ET AL.                                    DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendants Janelle Skinner-Weill, Winan' Wichapi To, Inc., Theodore C. Weill and Universal Wearparts, Inc., to dismiss or in the alternative for judgment on the pleadings, to which plaintiff Thomas Huffmaster has responded in opposition. Having considered the parties' submissions, the court concludes that the motion is well taken and should be granted.

Plaintiff Thomas Huffmaster brought this action pro se against fourteen named defendants who were part of or associated with a group of persons who in 2005 tried to "hi-jack" the Reform

Party of the United States of America (RPUSA).[1]  Plaintiff broadly alleges in his complaint that,

> Each of the . . . Defendants have engaged in a pattern of illicit activities designed to disrupt and deny the Plaintiff of his civil liberties and rights by continued wrongful use of action, fraud, harassment and intimidation via wrongful use of action, malicious prosecution, vexatious litigation, and fear inducing extortion constituting violations of Civil RICO Statutes as outlined in the civil provision of Chapter 96, Title 18, U.S.C. codified at 18 U.S.C. § 1961-1968, *et seq.*, that specifically authorizes the seeking of relief for actual and consequential damages and other relief which the Court deems just.

The remainder of the complaint does little to illuminate any factual basis for this conclusory charge, but a review of plaintiff's response to defendant's motion, and of the opinion entered by Judge Robert L. Hinkle in Reform Party of the United States v. O'Hara, et al., No. 4:05cv426-RH/WCS, gives the court some indication as to some of the events on which the complaint is grounded.

   Plaintiff claims in his response to defendant's motion that in August 2006, he sought to run for the United States Congress as a candidate of the Reform Party of the United States of America

---

   [1]   In addition to the four movants, plaintiff originally named as defendants D. Andrew Byrne, Jackson W. Maynard, Jr., Matthew D. Sawyer, Eric N. Weill, Terry P. Weill, Davie C. Richardson, R.I. Refrigeration Supply Co., Inc., Donald Hoppes, Jeanette Hoppes, Jerry Stewart, Charles Foster, Rebecca Foster, and Ruben J. Hernandez, along with five John Doe and five Jane Doe defendants.  He has since voluntarily dismissed his claims against all defendants except the movants and Terry Weill, who has not been served with process, though more than 120 days have passed since the case was commenced.

2

(Reform Party USA or RPUSA),[2] but that defendant Theodore C. Weill denied him that opportunity, using a letter from Charles Foster in which Foster lied by stating that he was the National Chairman of the Reform Party USA.  According to plaintiff, in addition, Beverly Kennedy appeared in person in opposition to his effort to run as a Reform Party candidate, and lied by stating that she was the Reform Party USA National Treasurer.  Huffmaster claims in his response that these three individuals "conspired to lie and keep him from running for Congress," and that Theodore Weill, in fact, actually said at a meeting before the Mississippi Election Commission that he would not let plaintiff run for office as a Reform Party candidate because plaintiff was a friend of Shawn O'Hara, who according to plaintiff was at all times the true National Chairman of the Reform Party USA.

Further illumination of the events to which plaintiff's response alludes is provided by the opinion of the court in <u>Reform Party of the United States v. O'Hara, et al.</u>, No. 4:05cv426-RH/WCS (N.D. Fla. Aug. 22, 2007).  There, the court explained that in 2005, a group of individuals tried to change leadership of the Reform Party USA and to oust, among others, then National Chairman at the time, Shawn O'Hara.  This group, under the direction of

---

[2]   Plaintiff's complaint does not identify the Reform Party USA by name, but rather repeatedly refers to "an unincorporated association" which the court understands from reading his response can only be the Reform Party USA.

Beverly Kennedy and Charles Foster, referred to as the "Kennedy faction," purported to call a national convention of the party in Tampa, Florida for June 2005, at which they purported to elect new officers and thereby oust former party officers and take control of the party.  In the wake of the vote in Tampa, a question arose as to who rightfully controlled the Reform Party USA.  O'Hara and other party officials whom the Kennedy faction had purported to oust, took the position that the actions of the Kennedy faction were "null and void" and that they, the O'Hara group, continued to control the party.  The Kennedy faction took the position that they represented the true Reform Party and that they alone had the right to operate under the Reform Party name.  Thus, November 2005, the officers who were purportedly elected at the Tampa national convention in June 2005, i.e., members of the Kennedy faction, filed suit in the name of the Reform Party USA America in federal district court in Florida against a group of "former" party officials alleging that the defendants therein were infringing Reform Party service marks and seeking to enjoin the defendants' use of the Reform Party name.  That case was pending at the time plaintiff alleges he sought to run for Congress and was denied that opportunity by Theodore Weill and others, including Kennedy and Foster.

Following a June 2007 trial of the Tallahassee case, the jury returned a verdict for the defendants, finding that the Tampa

convention was not validly called and that the Reform Party USA under the auspices of the Kennedy faction, had no right to control the Reform Party USA name. By memorandum opinion and order dated August 22, 2007, District Judge Robert L. Hinkle denied a motion by the plaintiffs for judgment as a matter of law.

Considering this context, plaintiff's allegation that defendants have engaged in a "pattern of illicit activities" that was "designed to disrupt and deny . . . his civil liberties and rights" presumably is intended to refer primarily to the actions of defendants, members and associates of the Kennedy faction, in misrepresenting themselves as having authority to act as and on behalf of the Reform Party and their wrongfully refusing to allow him to run for office as a Reform Party candidate. Such actions, he apparently contends, amounted to fraud because although they purported to act on behalf of the Reform Party USA, they were not valid party representatives and lacked authority to act on behalf of the Reform Party USA.

Plaintiff alleges, additionally, that beginning in 2000, defendants "began a pattern of vexatious lawsuits, as wrongful use of action, and continued into a string of vexatious lawsuits in 2001, 2002, 2004, 2005 and 2007." This, evidently, is the basis for his allegation that defendants engaged in "the continued wrongful use of action, . . . harassment and intimidation via wrongful use of action, malicious prosecution [and] vexatious

5

litigation." And while plaintiff does not assert or intimate that he was made a defendant in any of these alleged vexatious lawsuits, he alleges that the most recent of these lawsuits, those brought in 2005 (presumably the Tallahassee lawsuit) and 2007, were

> specifically directed to disrupt the Plaintiff's fundamental rights of freedom of association and his rights and duties in an unincorporated association and his rights and duties in an unincorporated association and his civil liberties via fear inducing extortion.

Moreover, even though he apparently was not a defendant in any of the alleged vexatious lawsuits, he nevertheless alleges that he has suffered financial loss in excess of $250,000 for "the time and costs consumed in assisting in the defense these [sic] vexatious lawsuits, lost work time, lost work, and ability to participate fully in associations that he is a lawful member of general compensatory harm and damages."[3]

---

[3] It bears mention at this time that plaintiff's complaint in this cause is nearly identical in substance and appearance to a pro se complaint filed in federal court in West Virginia on November 6, 2007 by three individuals, Jerome Heinemann, Nelson "Skip" Foley, Jr., and Jeanne Doogs, asserting identical claims for violation of RICO and the Hobbs Act. See Heinemann, et al. v. Kennedy, et al., 2:2007cv00091 (N.D. W. Va.). The plaintiffs in the Heinemann case alleged they were officers of the Reform Party and that defendants had sought to disrupt and prevent them from carrying out their lawful duties by engaging in a pattern of activities designed to disrupt and deny them their civil liberties and elected duties by continued "wrongful use of action," harassment and intimidation via wrongful use of action, malicious prosecution, vexatious litigation, and fear, including extortion.

Huffmaster modified the Heinemann complaint to delete the references to being an officer of the Reform Party (which he is not) and to being sued by the defendants (which he has not been).

There are additional allegations of fraud and other alleged misconduct by some or all of the defendants, including their allegedly having illegally spent money belonging to the Reform Party and having violated various campaign finance laws while acting under the guise of representing the organization.

Defendants argue in their motion that this court lacks subject matter jurisdiction because Huffmaster's complaint raises issues which are within the exclusive jurisdiction of the Federal Election Commission. To the point, they argue that because his complaint raises the question of party official legitimacy and the corresponding right to receive federal funds, plaintiff's claims involve disputes arising under the Federal Election Campaign Act of 1971 and are thus within the exclusive jurisdiction of the Federal Election Commission. The defendants in <u>Heinemann, et al. v. Kennedy, et al.</u>, 2:2007cv00091 (N.D. W. Va. March 10, 2008), argued that the court lacked subject matter jurisdiction over a case involving many of the same allegations as herein because the case involved alleged violations of federal campaign finance laws within the exclusive jurisdiction of the Federal Election

---

In the place of those allegations, Huffmaster alleges that he was denied the opportunity to run for office as a Reform Party candidate and that he has "assisted" in the defense of others who have been the subject of defendants' numerous vexatious lawsuits.
   Some of the claims in <u>Heinemann</u> were dismissed for lack of standing, and the case was dismissed in its entirety for lack of venue. See <u>Heinemann</u>, 2:2007cv00091 (N.D. W. Va. March 10, 2008).

Commission. That <u>Heinemann</u> court, while acknowledging that "many of the predicate acts on which the plaintiffs base their RICO and Hobbs Act claims, such as allegedly filing false reports with the Federal Election Commission, would be violations of campaign finance laws," declined to resolve the argument because it concluded that the plaintiffs lacked standing to assert any claims for harm to the Reform Party itself. That court, however, recognized that there were additional claims as to which the defendants' position had no arguable merit because they did not involve any violation of campaign finance laws. The court observed, for example, that many allegations asserted by the plaintiffs, "such as vexatious lawsuits and harassment, fell outside the realm of campaign finance law." <u>Id</u>. at 4 n.2.

The court went on to hold that the plaintiffs lacked standing to assert many of the claims in their complaint. Noting that "[a] *pro se* litigant may only represent his or her own personal interests, not the interests of any other person or organization," <u>Id</u>. at 4 (citation omitted), the court described claims by the plaintiffs that were based on actions directed against the Reform Party itself, which the plaintiffs lacked standing to pursue:

> For example, they allege that the defendants unlawfully hijacked the national Reform Party convention, illegally spent its money, violated various campaign finance laws while acting under the guise of representing the organization, illegally commandeered its Internet web site, and engaged in a pattern of vexatious litigation against both the national organization and various entities.

Id. at 4. "Even if true," the court wrote, "all of these injuries are injuries to one or more organizations, not to any of the three natural persons appearing before the Court as *pro se* litigants." Id. The court concluded that the plaintiffs lacked standing and the court consequently lacked subject matter jurisdiction "over any claim which does not allege a personal injury to one of the three *pro se* plaintiffs." Id. at 5.

Likewise, in the case at bar, plaintiff lacks standing over any claims that are based on injuries to the Reform Party or to other individuals associated with the Reform Party. In the court's opinion, in this case, this includes plaintiff's claims based on alleged "wrongful use of action, harassment and intimidation via wrongful use of action, malicious prosecution [and] vexatious litigation," for plaintiff does not allege that he has been made a party to any such litigation, or even threatened with litigation. The court recognizes plaintiff's allegation that he has been personally harmed by this litigation in that he has suffered financial loss in excess of $250,000 "for time and costs consumed in assisting the defense these [vexatious] lawsuits, lost work time, lost work." However, there is nothing in the complaint or otherwise to suggest any basis on which plaintiff could possibly have been legally bound to "assist the defense" of litigation against organizations or persons other than himself. That plaintiff may have chosen to contribute his own funds or time

9

to assist in the defense of litigation against others does not give him standing.[4] Cf. In re Berrien, 2007 WL 1701679, 4 (10th Cir. 2007) (finding that parents had standing in malicious prosecution action to recover defense costs paid on behalf of their daughter based on their "substantial relationship" with her and on the fact that they had been defendants in the action along with their daughter). Plaintiff's affiliation with, membership in or support of a political party and party officials is not the kind of "substantial relationship" that could support a finding of standing.

The sole claim as to which this plaintiff has standing is his claim that defendants, misrepresenting themselves as acting on behalf of the Reform Party, wrongfully denied him the opportunity to run for Congress as a Reform Party candidate. Plaintiff asserts this claim as a violation of RICO, 18 U.S.C. § 1962(c). A claim for a violation of RICO necessitates "1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an

---

[4] The court notes that the Heinemann plaintiffs were found to have standing as to their claims that "he or she personally [had] been harassed and injured by the defendants' alleged pattern of hailing them into court in various jurisdictions around the country to answer frivolous lawsuits." Id. at 5. Those plaintiffs, unlike Huffmaster, alleged that they had actually been repeatedly sued by one or more of the defendants and thus suffered personal loss from having to defend the lawsuits brought against them.

*enterprise."* In re Burzynski, 989 F.2d 733, 741–42 (5th Cir. 1993) (citation omitted). The "pattern of racketeering activity" has two components: "1) predicate acts–the requisite racketeering activity, and 2) a pattern of such acts." Id.

As "predicate acts" which form the basis for his RICO claim, plaintiff alleges defendants committed acts of mail fraud, wire fraud and bank fraud. However, plaintiff's complaint does not plead any of these claims with specificity, as required by Rule 9(b) of the Federal Rules of Civil Procedure, and in fact, his complaint does not specifically identify anything any of these defendants is alleged to have done.[5] That is, there is no

---

[5] Indeed, the only references to these defendants are as follows:
    That Janelle Skinner-Weill "has willfully acted as a primary kingpin in her individual capacity and in her capacity as Chief Executive Officer of Winan' Wichapi To, Inc., a for-profit business corporation, in the transfer of hundreds-of-thousands of unreported dollars between and among the defendants under the guise of one or more unincorporated associations," and that she "joined" in the "enterprise" that filed "vexatious lawsuits."
    Theodore C. Weill is alleged to have "willfully acted as a primary kingpin in his individual capacity as president for Universal Wearparts, Inc., a for-profit business corporation, in the transfer of hundreds-of-thousands of unreported dollars between and among the defendants under the guise of one or more unincorporated associations." He is also vaguely alleged to have "joined" in a "wrongful enterprise" that "actively engaged in the disruption of an unincorporated association" and to have "documented financial ties to a convicted felon."
    Defendants Winan' Wichapi To, Inc. and Universal Wearparts, Inc., are identified only as a for-profit business corporations which are two of three business entities "used as engines to finance the illicit enterprise conducted under the guise of one or more unincorporated associations. . . ."

specifically pled act of mail fraud, wire fraud or bank fraud attributed to any of the moving defendants.[6]

Plaintiff has also alleged a Hobbs Act claim as part of his RICO claim, suggesting that the requisite RICO predicate acts might be established through alleged violation of the Hobbs Act, 18 U.S.C. § 1951. Without specifying how, other than through "vexatious litigation" to which he was not a party, plaintiff claims he was the victim of "fear inducing extortion," referencing having been "harassed multiple times until he was forced from participation in a campaign for public office." He suggests this amounted to "fear inducing extortion" in violation of the Hobbs Act. Defendants argue that plaintiff's allegations, even if true, do not identify a Hobbs Act violation because alleged abuse of litigation and administrative procedure does not give rise to a claim for Hobbs Act extortion.

The Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." In a case cited by defendants, Manax v. McNamara, 660 F. Supp. 657 (W.D. Tex. 1987), the plaintiff alleged

---

[6] Even if plaintiff's response were considered in assessing whether plaintiff had satisfied his pleading obligation, he has alleged nothing more than that one of these defendants, Theodore Weill, misrepresented that he was acting with authority of the Reform Party in refusing to allow plaintiff to run as a Reform Party candidate.

that the defendants violated the Hobbs Act by soliciting and prosecuting allegedly frivolous lawsuits, insurance fraud and filing unsubstantiated claims with the Board of Medical Examiners and through the attempted use of the Texas State Board of Medical Examiners' complaint and hearing process to deprive him of his license to practice medicine, under color official right. The court held that these allegations did not state a proper claim within the ambit of § 1951, explaining:

> None of the Defendants' activities involves any use of actual or threatened force, so the Plaintiff must rely on the fact that some property of his was obtained, with his consent, and under color of official right. However, nowhere in the Plaintiffs' pleadings is there an assertion that property was in fact taken with consent.

660 F.Supp. at 661-62. Similarly, here, plaintiff has not alleged that any defendant used actual or threatened force, or that they obtained his "property" with his "consent." As defendants correctly note, even if his right to participate as an election candidate could be considered "property," plaintiff does not allege that this "property" was obtained with his consent.

As plaintiff has failed to sufficiently plead "predicate acts" against the moving defendants, the court concludes his claims against them should be dismissed.

Based on the foregoing, it is ordered that plaintiff's complaint against defendants Janelle Skinner-Weill, Winan' Wichapi To, Inc., Theodore C. Weill and Universal Wearparts, Inc. is dismissed with prejudice.

13

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 16th day of May, 2008.

/s/ Tom. S. Lee
UNITED STATES DISTRICT JUDGE